J-S38029-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| ANTHONY HOBAN, | |
| Appellant | No. 2288 EDA 2015 |

Appeal from the Order Entered July 17, 2015
In the Court of Common Pleas of Delaware County
Criminal Division at No(s): CP-23-CR-0002389-1998

BEFORE:  FORD ELLIOTT, P.J.E., OLSON AND JENKINS JJ.*

MEMORANDUM BY OLSON, J.:                    **FILED JULY 18, 2016**

Appellant, Anthony Hoban, appeals *pro se* from the order entered on July 17, 2015 denying his petition for a writ of *habeas corpus*.  We affirm.

The relevant factual background and procedural history of this case are as follows.  On January 12, 1999, Appellant pled guilty to burglary,[1] theft by unlawful taking,[2] carrying a firearm without a license,[3] and possession of a controlled substance.[4]  On April 29, 1999, Appellant was sentenced to an aggregate term of five to ten years' imprisonment.  For reasons that are

---

[1] 18 Pa.C.S.A. § 3502(a).

[2] 18 Pa.C.S.A. § 3921(a).

[3] 18 Pa.C.S.A. § 6106(a)(1).

[4] 35 P.S. § 780-113(a)(16).

\* Judge Jenkins did not participate in the consideration or decision of this case.  This case is decided by a two-judge panel pursuant to 210 Pa. Code § 65.5(C)(2)(a).

unclear in the record, Appellant's maximum sentence date was calculated as March 2, 2019.

In August 2012, Appellant was granted pre-release. On June 17, 2013, Appellant was notified by the Pennsylvania Board of Probation and Parole ("PBPP") that, pursuant to 2012 P.L. 1050 ("Act 122"), he was no longer eligible for pre-release. Thus, Appellant was re-committed to the State Correctional Institution at Fayette ("SCI-Fayette").

Appellant filed an administrative appeal, and the PBPP denied that appeal. Appellant thereafter filed a petition for review in the Commonwealth Court of Pennsylvania. The Commonwealth Court dismissed the petition. *Hoban v. PBPP*, 300 C.D. 2015 (Pa. Cmwlth. Mar 24, 2015) (*per curiam*). On April 13, 2015, Appellant filed the instant petition for a writ of *habeas corpus*. On July 17, 2015, the trial court denied the petition. This timely appeal followed.

Appellant presents two issues for our review:

1. Does not a [c]onstitutionally protected liberty interest exist[] where Appellant was released into society on pre-release and then through no fault of his own sent back to prison without any procedural safeguards, due to the eradication of pre–release pursuant to Act 122?

2. Did not this [s]tate action violate Appellant's [d]ue [p]rocess rights under the United States and Pennsylvania Constitutions?

Appellant's Brief at 5.

- 2 -

Preliminarily, we address the Commonwealth's contention that because Appellant lacked any liberty interest in his pre-release status, the trial court and this Court lack jurisdiction over the instant case. Subject matter jurisdiction is a pure question of law, therefore our standard of review is *de novo* and our scope of review is plenary. ***See Roman v. McGuire Mem'l***, 127 A.3d 26, 30 (Pa. Super. 2015), *appeal denied*, 134 A.3d 57 (Pa. 2016) (citation omitted).

The Commonwealth's argument conflates subject matter jurisdiction with the merits of the underling claim. "Generally, subject matter jurisdiction [is] defined as the court's power to hear cases of the class to which the case at issue belongs." ***Paluti v. Cumberland Coal LP***, 122 A.3d 418, 423 (Pa. Super. 2015) (citation omitted). On the other hand, the merits of the underlying claim relate to whether or not a litigant is entitled to relief based upon the law and the factual circumstances of that case.

It is well-settled that the courts of common pleas of this Commonwealth possess subject matter jurisdiction to consider *habeas corpus* petitions. 42 Pa.C.S.A. § 6502(a). Furthermore, venue is proper in the court of common pleas which originally ordered the petitioner's confinement. Pa.R.Crim.P. 108(a). Thus, if Appellant's filing were a proper *habeas corpus* petition, the trial court possessed subject matter jurisdiction to reach the merits of the petition. On the other hand, if Appellant's petition is properly considered a petition for review within the original jurisdiction of

the Commonwealth Court or a Post-Conviction Relief Act ("PCRA") petition, the trial court lacked subject matter jurisdiction to reach the merits of the petition.

We first consider whether the Commonwealth Court had exclusive jurisdiction over Appellant's petition. The Commonwealth Court possesses exclusive, original jurisdiction over "civil actions or proceedings [ ... a]gainst the Commonwealth government, including any officer thereof, acting in his official capacity except[ ] actions or proceedings in the nature of applications for a writ of *habeas corpus* or post-conviction relief not ancillary to proceedings within the appellate jurisdiction of the court[.]" 42 Pa.C.S.A. § 761(a)(1). In a challenge to an action taken by the PBPP, the nature of the allegations of error and the relief sought determine whether the case comes within the Commonwealth Court's exclusive original jurisdiction. *McGriff v. PBPP*, 809 A.2d 455, 458 (Pa. Cmwlth. 2002), *aff'd*, *McGriff v. PBPP*, 838 A.2d 564 (Pa. 2003) (*per curiam*).

We find instructive our Supreme Court's decision in *Brown v. PBPP*, 81 A.3d 814 (Pa. 2013) (*per curiam*). In *Brown*, our Supreme Court held that the petitioner's request to be released from prison was correctly considered a *habeas corpus* petition. *Id.* at 815. Our Supreme Court noted that Brown "principally [was] testing the legality of his commitment and detention[.]" *Id.* (internal alteration, quotation marks, and citations omitted). Our Supreme Court reasoned that this type of relief made the

- 4 -

J-S38029-16

petition fall under the guise of *habeas corpus* and not under the Commonwealth Court's jurisdiction. ***Id.*** Therefore, our Supreme Court ordered the petition transferred to the appropriate court of common pleas.

In this case, Appellant is seeking his release from prison. He argues that his confinement in SCI-Fayette is illegal because the elimination of the pre-release program pursuant to Act 122 deprived him of due process of law. Although this differs from Brown's argument that he was illegally detained in a state correctional institution because of the lack of a written sentencing order, the gravamen of both cases involves the contention that the petitioners were unlawfully detained in a state correctional institution. The exact reason for that illegal detention is immaterial to determining if the petition properly lies in the Commonwealth Court's original jurisdiction. Accordingly, we conclude that, like in ***Brown***, the Commonwealth Court did not possess exclusive, original jurisdiction over Appellant's petition.

We next turn to whether the trial court should have considered Appellant's filing a PCRA petition. The PCRA

> provides for an action by which persons convicted of crimes they did not commit and persons serving illegal sentences may obtain collateral relief. The action established in [the PCRA] shall be the sole means of obtaining collateral relief and encompasses all other common law and statutory remedies for the same purpose that exist when [the PCRA] takes effect, including *habeas corpus* and *coram nobis*.

42 Pa.C.S.A. § 9542. Our Supreme Court has explained that

> [t]he plain language of Section 9542 demonstrates quite clearly that the General Assembly intended that claims that could be

- 5 -

> brought under the PCRA must be brought under that Act. No other statutory or common law remedy "for the same purpose" is intended to be available; instead, such remedies are explicitly "encompassed" within the PCRA.

*Commonwealth v. Descardes*, 2016 WL 1249964, at *5 (Pa. Mar. 29, 2016) (internal alteration and citation omitted; emphasis removed).

In this case, Appellant's claim – that his detention violates the Due Process Clause – is not cognizable under the PCRA. In order for a claim to be cognizable under the PCRA, a petitioner must be challenging his underlying conviction and/or sentence. *See id.*, *citing Commonwealth v. Peterkin*, 722 A.2d 638, 640-641 (Pa. 1998). Appellant is not challenging his underlying conviction or sentence. He concedes that his conviction and sentence were lawful. Instead, he challenges the revocation of his pre-release status. The absence of any challenge to Appellant's conviction and sentence becomes plain when one acknowledges that Act 122, the legislative enactment that eliminated the pre-release program, did not exist when Appellant entered his guilty plea and received his sentence nor does it purport to alter or impair the statutory authority underlying Appellant's guilty plea or punishment. Therefore, the trial court properly did not consider Appellant's petition under the PCRA. As Appellant's challenge is not within the original jurisdiction of the Commonwealth Court nor is it within the confines of the PCRA, Appellant's filing is properly considered a *habeas corpus* petition. The Court of Common Pleas of Delaware County had jurisdiction over the petition and venue was proper in that county.

Accordingly, we reject the Commonwealth's argument that the trial court (and thus this Court) lacked jurisdiction to consider the merits of Appellant's *habeas corpus* petition.

Turning to the merits of Appellant's two issues raised on appeal, he argues that Act 122 denied him due process of law as it essentially revoked his pre-release status without a hearing or any other procedural safeguard. As the Commonwealth Court explained:

> In order to determine whether a constitutional violation has occurred, a determination must initially be made that a protected liberty interest exists and, if so, what process is due. ***Hagan v. Tirado****,* 896 F.Supp. 990 (C.D. Cal. 1995). Protected liberty interests may be created by either the Due Process Clause itself or by state law. ***Sandin v. Conner****,* 515 U.S. 472 (1995); ***Wolff v. McDonnell****,* 418 U.S. 539 (1974). Where a liberty interest is not created by the Due Process Clause itself:
>
>> States may under certain circumstances create liberty interests which are protected by the Due Process Clause. But these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, ***see, e.g.,*** ***Vitek v. Jones****,* 445 U.S. 480, 493 (1980) (transfer to mental hospital), and ***Washington v. Harper***, 494 U.S. 210, 221-222 (1990) (involuntary administration of psychotropic drugs), nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.
>
> ***Sandin****,* 515 U.S. at 483-484. In ***Sandin****,* the prisoner, Conner, complained that his segregation in a special holding unit for a disciplinary misconduct that was later expunged violated his due process rights. The [Supreme Court of the United States] held that "Conner's discipline in segregated confinement did not present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest" because it did not exceed other types of segregated confinement and, due to

the restrictions on prisoners outside of confinement at that prison, did not work a major disruption in his environment. **Id.** at 485.

In **Meachum v. Fano**, 427 U.S. 215, 224 (1976), which involved transfers from a medium security prison to a maximum security prison, the Supreme Court [of the United States] held that the Due Process Clause does not protect every change in the conditions of confinement having a substantial adverse impact on the prisoner. Because the Due Process Clause is not so broad, it does not create a liberty interest in prisoners to be free from intrastate prison transfers. **Id.** at 225. Moreover, the [C]ourt stated, such transfers are within the normal limits of custody which the conviction authorizes the state to impose. **Id.**

Just as in **Sandin** and **Meachum**, the Due Process Clause does not create a liberty interest in a prisoner's participation in a pre-release program. [**Lawson v. Com., Dep't of Corr.**, 539 A.2d 69, 72 (Pa. Cmwlth. 1988)]. There is also no state-created liberty interest in the pre-release status that is protected by the Due Process Clause because the revocation is not the type of deprivation of the freedom from restraint required by the Court in **Sandin.** **See Hagan**, 896 F.Supp. at 995 (if an inmate placed in disciplinary segregation has no due process right to procedures established in state regulations, *a fortiori* an inmate placed in administrative segregation has no such due process right). The transfer of a prisoner into an SCI imposes no "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life" because an SCI is the place all prisoners ordinarily expect to serve their term, and there was nothing about [Wilder's] placement or conditions in SCI-Camp Hill that was different from other residents of SCI-Camp Hill.

**Wilder v. Dep't of Corr.**, 673 A.2d 30, 32-33 (Pa. Cmwlth. 1996), *appeal denied*, 681 A.2d 1344 (Pa. 1996) (internal alterations omitted); **see Myers v. Ridge**, 712 A.2d 791, 795 (Pa. Cmwlth. 1998), *appeal denied*, 742 A.2d 173 (Pa. 1999).

The United States Court of Appeals for the Third Circuit has similarly held that an inmate in Pennsylvania has "neither an independent due

process nor a state-created liberty interest in his revoked pre[-]release status." **Powell v. Weiss**, 757 F.3d 338, 346 (3d Cir. 2014). Without a liberty interest in the revocation of his pre-release status, Appellant is unable to prove that his current detention in SCI-Fayette violates his due process rights. Accordingly, we affirm the denial of relief.[5] **See In re Payne**, 129 A.3d 546, 571 (Pa. Super. 2015) (citation omitted) (we may affirm on any basis).

Order affirmed.

Judge Jenkins did not participate in the consideration or decision of this case.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/18/2016

---

[5] Appellant relies heavily on **Young v. Harper**, 520 U.S. 143 (1997), in support of his argument that he had a liberty interest in his pre-release status. **Young**, however, is distinguishable from the case at bar. Under the Oklahoma pre-parole program at issue in **Young**, there was an implicit understanding that pre-parole would not be revoked if the pre-parolee lived up to his or her pre-parole conditions. **Id.** at 148. On the other hand, under Pennsylvania's pre-release program, an individual could have his pre-release revoked for purely administrative reasons. **See** 37 Pa. Code § 94.3(a)(10).